No. 13,263.

### PFAFFENBERGER ET AL. *v.* PLATTER ET AL.

DEBTOR AND CREDITOR.— *Voluntary Assignment.—Agreement to Release Claim Upon Partial Payment.—Judicial Sale.*—An agreement by a creditor to release all claim upon land previously purchased by him at a sale upon execution, in consideration that the assignee of his debtor will pay him a certain sum, less than the amount of his bid, is not within the rule that a partial payment will not discharge a debt, and is binding.

SAME.— *Valueless Junior Lien.— Redemption from Execution Sale.— Right of Creditor to Enforce.*—Where a deed of assignment provides that the proceeds realized from the property conveyed to the assignee shall, after the payment of expenses, be first applied to the redemption of lands of the assignor sold on execution, and next to the payment of liens in the order of priority, to which provisions all the creditors agree, a judgment creditor, whose lien is valueless by reason of being junior to many others, can not compel the assignee to pay him the amount of his bid at a sale under his judgment.

From the Jackson Circuit Court.

*W. K. Marshall,* for appellants.

*R. Hill,* for appellees.

ELLIOTT, J.—The material facts stated in the complaint are these : On the 8th day of May, 1877, the appellants recovered judgment against Lycurgus Shields and others. An execution was issued and the land of the execution debtors sold to George Pfaffenberger, he having bid for it the sum of $600. The sum bid by George Pfaffenberger was bid for all of the appellants, and was paid by entering a credit of $548 on the judgment, and the remainder was paid in cash and was applied in payment of costs. A certificate was issued to Pfaffenberger by the sheriff. Before the year for redemption expired, the judgment debtors made an assignment of their property to the appellees for the benefit of their creditors, to which the creditors all assented. The agreement between the parties to the assignment, a copy of which is filed with the complaint, was, that the proceeds re-

alized from the property conveyed to Platter should be applied as follows: 1st. To the payment of the expenses of the assignment. 2d. To the redemption of all lands of the assignors that had been sold upon execution. 3d. To the payment of liens upon the lands of the grantors, in the order of priority. 4th. To the payment *pro rata* of all other claims. After the assignment, the appellees sold the land, which George Pfaffenberger had bought at sheriff's sale, for $960. Of the sum received for the land, the appellees paid the appellants $59.60, but refuse to pay anything more. The substance of the averments of the fifth paragraph of the appellees' answer is, that the judgment on which the appellants purchased the land was junior to so many other judgments as to render the appellants' lien of no value; that they desired to get back the money they had paid as costs, and agreed with the appellees that if they would pay that sum to them, they, the appellants, would surrender all claim to the land; that the appellees did pay them the sum of $59.60, which was by them accepted in full satisfaction of their claim and lien.

The answer is good. The appellees were not the debtors of the appellants, and the case is not within the rule that a partial payment will not discharge a debt. Here, the parties who paid the judgment creditor made an agreement with him to release his claim for an agreed consideration, so that all the elements of a valid contract are present. As the appellants agreed to receive the sum specified for their claim, they can not escape from their contract.

The provision in the deed of assignment does not bind the appellees to pay every judgment against their assignors, but to apply the proceeds of the sales of trust property to the payment of judgments, in the order of priority. We incline to think the complaint is bad, because it does not show that the appellants' judgment was entitled to priority; but we need not decide anything upon that point, for the answer shows that there were so many prior judgments as to make

the lien of the appellants valueless. If the lien was of no value, then no right of action could possibly exist against the assignees, since they were bound not to waste the trust funds in paying a valueless lien. Certainly, the holder of such a lien could have no right of action unless there was a breach of duty, and in order to show a breach of duty, it must appear that the assignees had money in their hands which they were bound to pay to the lien-holders.

Even if it were conceded that the appellants had a right to compel the appellees to pay them the amount of their bid, we do not think there would be any personal liability on the part of the assignees, if, indeed, there is in any event a personal liability at all, until it was shown that they had money enough in their hands to redeem from prior sales, for the clear implication of the contract of assignment is, that liens and claims shall be removed in the order of priority. In fact, the deed of assignment provides that no lien shall be changed or displaced, and this clearly implies that liens shall be paid, and redemptions effected, in the order of rank and date.

We must look to the entire contract between the parties, and from that, and not from fragmentary provisions, gather the intention of the parties; and when this is done, it becomes very clear that the intention was that redemptions should be made when of benefit to creditors, and not simply to displace ineffective claims. Suppose, for illustration, that the liens paramount to the appellants' claim were three thousand dollars, and the land of no greater value than nine hundred and sixty dollars, would it be seriously contended that the assignees were bound to redeem the land from the appellants by paying them the full amount of their bid? Such a holding would thwart the manifest purpose of the contract, and defeat the very object it was intended to accomplish—that of securing something to be distributed among the creditors; and yet this is, in principle and effect, the holding the appellants ask us to make.

Reibel, Administratrix, v. The Cincinnati, Indianapolis, St. L. & C. R'y Co.

It is, as we have said, very doubtful whether the complaint states a cause of action; it is, indeed, doubtful whether an action will lie against the assignees, for it seems that the appropriate remedy, if it be conceded that there is any right of action at all, is to apply to the court for an order to compel the assignees to pay over of the trust funds in their hands the amount the appellants are entitled to receive; but, waiving a decision of these questions, we hold the answer good.

It is unnecessary to discuss in detail the questions argued by counsel, for what we have said disposes of all the questions in the record.

Judgment affirmed.

Filed May 9, 1888.